THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES RATH, Defendant-Appellant.

Third District   No. 3—83—0433

Opinion filed January 31, 1984.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, James Rath, appeals a declaration of his unfitness to stand trial following a jury trial in the circuit court of La Salle County. The defendant had been charged with four counts of forgery.

At various times during the pretrial proceedings the defendant claimed to be the royal son of the Sultan of Turkey and Ethel Barrymore, a diplomat with immunity from prosecution, a doctor and an attorney.

The court believed that on the basis of these initial allegations, a bona fide doubt existed as to the defendant's fitness to stand trial and ordered, over defendant's objection, that he be examined pursuant to section 104—13 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—13).

Despite the fact that the defendant insisted on representing himself without additional counsel, the public defender's office was appointed "to assist the defendant on a standby basis" should he wish to consult with an attorney.

The matter proceeded to a fitness hearing before a jury and two psychiatrists testified.

Dr. Chuprevich testified that the defendant was suffering from a mental disorder despite the defendant's belief that he was sane. The doctor believed that the defendant was a paranoid schizophrenic who experienced delusions and hallucinations, had no sense of external reality and the mental disorder involved the aberration of the defendant's thought processes.

The doctor "doubted" whether the defendant understood the nature of the charges against him or whether he could assist in his own defense as required by section 104—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—10). He felt, however, that if provided with a course of treatment, the defendant might attain fitness within one year.

The State rested, and the defendant called Dr. Kruglik to testify in his behalf. The doctor had been previously appointed by the court to examine the defendant, but the defendant had not cooperated.

Dr. Kruglik believed that although he felt the defendant understood the nature of the charges against him, he had "some question" whether the defendant was mentally capable to cooperate with counsel in his own defense.

Dr. Kruglik agreed with Dr. Chuprevich that there was a "good likelihood" that the defendant would attain fitness within one year if he were provided with a course of treatment. The doctor also noted, however, that it was possible that defendant was a con man feigning his mental illness.

During the proceedings, the defendant totally refused to let the public defender assigned to his case assist him in any way. He specifically complained of appointed counsel looking over his shoulder at his briefs. The defendant attempted to subpoena various judges from the

Federal court in Chicago as defense witnesses but without success. The defendant ordered the public defender not to say anything during the instruction conference. The defendant made his own closing argument which consisted of a pathetic attempt to prove his regal lineage, that he was only a poor baron who had been the victim of perjured psychiatric testimony and racial prejudice, and despite everything he was "a gentleman and a genius" who had "beat the Hell out of the best legal minds in Ottawa."

Both the defendant and the State contended that the defendant was fit to stand trial. The jury disagreed. The defendant was appointed counsel, over his objection, and the issue on appeal is whether the case must be reversed because the trial court permitted the defendant to proceed at the hearing on fitness without availing himself of his court-appointed attorney who was present but not permitted to intervene by the defendant.

First of all it must be noted that defense counsel on appeal contends that it was error under the facts of this case to permit the defendant to waive counsel when it was apparent that there was a bona fide doubt of the defendant's mental ability to make a valid waiver.

The State correctly argues that the defendant was not actually allowed to waive counsel, since the public defender was present throughout the fitness hearing.

■ Both sides acknowledge that every defendant has the legal right to waive counsel (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525); however, defendant's counsel on appeal maintains the issue here concerns the defendant's mental ability to make a knowing and intelligent waiver of such a basic and important right.

In assessing the validity of defendant's purported waiver of counsel, or his refusal to use appointed counsel present at his hearing, we are called upon to determine whether this particular defendant had the requisite capacity to either effectuate a waiver or, alternatively, to conduct his own defense in the presence of but without the assistance of appointed counsel. We believe it is necessary to make such a determination, and that merely appointing counsel without more was inadequate to meet the defendant's right to effective assistance of counsel. *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019; *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 372 N.E.2d 1014; *Evans v. United States* (D.C. App. 1951), 83 A.2d 876.

"[W]e have no serious doubt that a person against whom a prima facie showing has been made of having an unsound mind of paranoid state could not properly be held to have waived

counsel intelligently, understandingly, competently, or knowingly. If a person is insane at the time of the trial of a criminal case, he can not legally waive counsel for the reason that he is incapable of making a proper defense." *Evans v. United States* (D.C. App. 1951), 83 A.2d 876, 879.

In the case at bar, the circuit court correctly believed that a bona fide doubt existed as to defendant's fitness to stand trial. Having properly declared that such a doubt existed, the court then erred in allowing the defendant to represent himself. Until the shadow of defendant's questioned ability to understand the nature of the charges against him and his ability to cooperate in his own defense was removed, he was not only entitled to be represented by competent counsel, it was required, even if against his will. *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 338 N.E.2d 56 (circuit court wisely deferred ruling on self-representation until after the question of defendant's competency had been resolved).

We must acknowledge that the circuit court seriously and sincerely tried repeatedly to persuade the defendant to permit the public defender to assist him in his defense.

The State correctly argues that our case law recognizes that a defendant's decision to represent himself often operates to his own detriment. (*People v. Siler* (1980), 85 Ill. App. 3d 304, 406 N.E.2d 891.) We have already acknowledged that the trial judge did a commendable job in attempting to persuade the defendant to use his attorney. Our system of justice does not require the trial judge "to shun his robes and assume an adversarial position." *People v. Siler* (1980), 85 Ill. App. 3d 304, 309.

However, the foregoing is only applicable to the case at bar if we assume at the outset that the defendant had the requisite competency to make the decision not to be represented by counsel. From the evidence adduced here we cannot make such an assumption.

For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed and the cause is remanded with directions that counsel be appointed to represent the defendant as an active adversary on the defendant's behalf instead of as a passive bystander to the proceedings.

Reversed and remanded.

STOUDER, P.J., and HEIPLE, J., concur.